Tiffany Troy, Esq.
John Troy, Esq.
Aaron B. Schweitzer, Esq.
TROY LAW, PLLC
41-25 Kissena Boulevard
Suite 110
Flushing, NY 11355
Phone (718) 762-1324
Fax (718) 762-1342
troylaw@troypllc.com
*Attorneys for Plaintiffs*
*John Troy, Esq. and Aaron B. Schweitzer, Esq.*
*to be admitted* pro hac vice

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

------------------------------------------------------------------ x

KUN DUAN,
*on behalf of himself and others similarly situated,*

                                        Plaintiff,

                        v.

ORIENT EXPRESS AZ, LLC
        d/b/a Sierra Suites, and
XIAOFEN WEN
        a/k/a Xiaofen Li,

                                        Defendants.

------------------------------------------------------------------ x

**Case No. 24-cv-_____ (___) (___)**

**COLLECTIVE & CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff KUN DUAN (hereinafter "Duan" or "Plaintiff"), by and through his attorney, Tiffany Troy of Troy Law, PLLC (and John Troy and Aaron B. Schweitzer of Troy Law, PLLC, to be admitted *pro hac vice*), hereby bring this Complaint against Defendants ORIENT EXPRESS AZ, LLC d/b/a Sierra Suites (hereinafter "Sierra Suites" or "LLC Defendant"), and XIAOFEN WEN a/k/a Xiaofen Li (hereinafter "Wen" or "Individual Defendant") (Individual Defendant hereinafter collectively with LLC Defendant, "Defendants"), and alleges as follows:

## INTRODUCTION

1.      Plaintiff brings this action, on behalf of himself and other similarly situated employees of Sierra Suites's boutique hotel, located at 391 East Fry Boulevard, Sierra Vista, AZ

85635, against Defendants for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1), the Arizona Payment of Wages Law ("AZPW"), A.R.S. § 23-353, and the Internal Revenue Code ("IRC"), 26 U.S.C. § 7434, arising from Defendants' various willful, malicious, and unlawful employment and tax-reporting policies, patterns, and/or practices.

2.      Plaintiff alleges pursuant to FLSA, 29 U.S.C. § 216(b), that he is entitled to recover from the Defendants: (1) unpaid overtime wages; (2) liquidated damages equal to unpaid overtime wages or prejudgment interest; (3) postjudgment interest; and (4) reasonable attorneys' fees and costs.

3.      Plaintiff further alleges pursuant to AZPW, A.R.S. § 23-355(A), that he is entitled to recover from the Defendants: (1) unlawfully withheld wages; and (2) liquidated damages equal to two times unlawfully withheld wages (together with (1) amounting to three times the unlawfully withheld wages).

4.      Plaintiff further alleges pursuant to IRC, 26 U.S.C. § 7434(b), that he is entitled to recover from the Defendants the greater of: (1) five thousand dollars ($5,000.00); or (2) the sum of actual damages sustained as a proximate result of the filing of the fraudulent information return(s), the costs of this action, and at the court's discretion reasonable attorney fees.

5.      Plaintiff has fulfilled all conditions precedent.

**JURISDICTION & VENUE**

6.      This Court has subject matter jurisdiction over this controversy under the FLSA, 29 U.S.C. § 216, and 28 U.S.C. § 1331. As set forth more fully below, Defendants are a covered enterprise under the FLSA, 29 U.S.C. § 203(s), inasmuch as Defendants operate an enterprise engaged in interstate and/or foreign commerce, that enterprise had more than $500,000.00 in gross annual revenue during the relevant period, and Plaintiff and other employees handled goods that had been moved in commerce.

7.    This Court has subject matter jurisdiction over this controversy under the IRC, 26 U.S.C. § 7434(a), and 28 U.S.C. § 1331.

8.    This Court has supplemental jurisdiction over Plaintiff's AZPW claims under 28 U.S.C. § 1367(a), as Plaintiff's FLSA and AZPW claims are so closely related as to form a single case or controversy under Article III of the United States Constitution.

9.    Venue is proper in the United States District Court for the District of Arizona pursuant to 28 U.S.C. § 1391, because Defendants reside and/or conduct business in the District of Arizona, and because the acts and omissions giving rise to the claims alleged herein took place within the District of Arizona.

## PLAINTIFF

10.    Duan was employed by Defendants to work as a cook at Sierra Suites's in-hotel restaurant from on or about June 13, 2023 through on or about May 12, 2024.

## DEFENDANTS

### ORIENT EXPRESS AZ, LLC d/b/a Sierra Suites

11.    LLC Defendant was, throughout the period relevant to this lawsuit, a domestic limited liability company with a registered office at 6700 East Speedway Boulevard, Suite 301, Tucson, AZ 85710 and a principal place of business at 391 East Fry Boulevard, Sierra Vista, AZ 85635, where it operated "Sierra Suites," boutique hotel.

12.    Sierra Suites was, throughout the period relevant to this lawsuit, a business with gross annual revenue in excess of five hundred thousand dollars ($500,000.00) per year.

13.    Sierra Suites was, throughout the period relevant to this lawsuit, a business engaged in interstate or foreign commerce, including in ingredients for various dishes, whose employees, including Plaintiff, handled goods moved in commerce, including ingredients and cleaning supplies.

14.     Sierra Suites's in-hotel restaurant, considered alone, throughout the period relevant to this lawsuit employed between seven (7) and nine (9) employees, including Plaintiff, at any one time: Plaintiff; between two (2) and four (4) miscellaneous kitchen workers; one (1) kitchen helper; one (1) server; and one (1) host or hostess.

15.     Sierra Suites's hotel, considered alone, throughout the period relevant to this lawsuit employed about ten (10) employees at any one time.

### *XIAOFEN WEN a/k/a Xiaofen Li*

16.     Wen was, throughout the period relevant to this lawsuit, the general manager of Sierra Suites's hotel and in-hotel restaurant, and Duan's immediate supervisor who controlled his and other employees' work schedules and conditions of employment.

17.     Wen had the power to hire and fire employees of Sierra Suites, including Duan, whom she hired.

18.     Duan was put in contact with Wen by an employment agency in Los Angeles; Wen hired Duan after Duan reached out to her by telephone.

19.     Wen determined Duan's initial rate of compensation and all changes thereto, determined the methods by which he would be paid his compensation, and paid him his compensation.

20.     Throughout the period relevant to this lawsuit, Wen kept records of Duan's compensation in a notebook.

21.     Throughout the period relevant to this lawsuit, Wen exercised financial and operational control over the LLC Defendant, and controlled Plaintiff's and other employees' employments at Sierra Suites.

22.     Wen acted willfully, intentionally, and maliciously and was Plaintiff's employer, and the employer of other employees similarly situated, within the meanings of the FLSA and AZPW, and is jointly and severally liable with LLC Defendant under the FLSA and AZPW.

## STATEMENT OF FACTS

23.     Duan was employed by Defendants to work as a cook at Sierra Suites's in-hotel restaurant from June 13, 2023 through July 15, 2023.

24.     Throughout the period relevant to this lawsuit, Sierra Suites's in-hotel restaurant was open to customers six (6) days per week, from 11:00 AM through 9:00 PM.

25.     During the period relevant to this lawsuit, through on or about February 15, 2024, Sierra Suites's in-hotel restaurant was closed to customers on Tuesdays.

26.     From on or about February 16, 2024 through the remainder of the period relevant to this lawsuit, Sierra Suites's in-hotel restaurant was closed to customers on Wednesdays.

27.     From on or about June 13, 2023 through on or about July 15, 2023, Duan worked about sixty (60) hours per week: from about 11:00 AM through about 9:00 PM, Mondays, and Wednesdays through Sundays.

28.     From on or about July 16, 2023 through on or about February 15, 2024, Duan worked about seventy-eight and one-half (78.5) hours per week: from about 9:30 AM through about 10:00 PM on Mondays; between two (2) and five (5) (on average, about three and one-half (3.5)) hours on Tuesdays; and from about 9:30 AM through about 10:00 PM on Mondays on Wednesdays through Sundays.

29.     From on or about February 16, 2024 through on or about May 12, 2024, Duan worked about seventy-seven (78.5) hours per week: from about 9:30 AM through about 10:00 PM on Mondays and Tuesdays; from about 8:00 PM through about 10:00 PM on Wednesdays; and from about 9:30 AM through about 10:00 PM on Thursdays through Sundays.

30.     Throughout Duan's employment, Defendants failed to keep or maintain records of Duan's working days, the start and end of each of Duan's working days, the hours Duan worked per day, and the hours Duan worked per week.

31.     After about the first month of his employment, Duan had to come to work early, stay late, and come into work on days the restaurant was closed, to help make sure the restaurant was clean, set up, and ready to serve customers.

32.     From on or about June 13, 2023 through on or about August 31, 2023, Duan was paid a flat salary of five thousand two hundred dollars ($5,200) per month.

33.     From on or about September 1, 2023 through on or about May 12, 2024, Duan was paid a flat salary of five thousand seven hundred dollars ($5,700.00) per month.

34.     Throughout his employment, Duan's flat salaries failed to compensate him for hours worked beyond the fortieth (40th) hour each week.

35.     Throughout his employment, Duan's flat salaries failed to compensate him for hours worked beyond the fortieth (40th) hour each week at a rate one and one-half times a regular hourly rate.

36.     Throughout his employment, Duan was not an exempt executive, administrative, or professional employee exempt from receiving overtime.

37.     In addition to his flat salaries, Duan received variable tip-outs from a tip pool.

38.     From on or about June 13, 2023 through on or about December 31, 2023, Duan's tip-outs amounted to between about seven hundred dollars ($700.00) and about eight hundred dollars ($800.00) per month.

39.     From on or about January 1, 2024 through on or about May 12, 2024, Duan's tip-outs amounted to between about one thousand two hundred dollars ($1,200.00) and about one thousand five hundred dollars ($1,500.00) per month.

40.     No one at Sierra Suites, neither Individual Defendant, nor anyone else, gave Duan any notice that there would be a tip credit applied to his wage.

41.     Because no one at Sierra Suites, neither Individual Defendant, nor anyone else, told Duan there would be a tip credit applied to the minimum wage, Defendants were not entitled to credit Duan's tip-outs toward payment of overtime.

42.     Throughout his employment, Duan was compensated as follows. Each week, he would receive a direct deposit payment from LLC Defendant. From on or about June 13, 2023 through on or about December 29, 2023, the net amount direct-deposited per week was five hundred two dollars and twenty-nine cents ($502.29); from on or about December 30, 2023 through on or about May 12, 2024, the net amount direct deposited per week was five hundred five dollars and eighteen cents ($505.18). At the end of each month, the net direct-deposited amounts, rounded to the nearest dollar, that were deposited during that month would be subtracted from his monthly salary, the monthly tip-out amount, rounded to the nearest dollar, would be added to the result thus obtained, and Duan would be given the final sum total in cash.

43.     For at least the tax year 2023, LLC Defendant only reported Duan's direct deposit income, and only a fraction of Duan's tips, on Duan's IRS Form W-2, and omitted to report almost all of Duan's pay by cash.

44.     Based on the allegations in paragraphs  32, 33, 38, and 39, *supra*, Duan estimates that he earned approximately thirty-six thousand six hundred thirty-nine dollars and fifty-six cents[1]

---

[1] $5,200/month * 12 months/year / 52 weeks/year * 11.43 weeks from June 13, 2023 through August 31, 2023 +
$5,700/month * 12 months/year / 52 weeks/year * 17.43 weeks from September 1, 2023 through December 31, 2023

($36,639.56) in base salary, and four thousand nine hundred ninety-four dollars and fifty-one cents[2] ($4,994.51) in tip-outs.

45.     However, LLC Defendant only reported six thousand dollars ($6,000.00) of wages, and one thousand thirty-seven dollars and forty-eight cents ($1,037.48) on Duan's 2023 IRS Form W-2.

46.     Defendants did not post a notice of employees' rights under the federal and State wage-and-hour laws on the premises of Sierra Suites.

47.     Upon the termination of Duan's employment, Defendants promised him a severance of ten thousand dollars ($10,000.00), and indeed LLC Defendant wrote, and Individual Defendant signed, a check to Duan for ten thousand dollars ($10,000.00) dated May 12, 2024.

48.     However, that check bounced when Duan tried to deposit it.

49.     When Duan complained to Defendants about this, Defendants wired him three thousand twenty-five dollars ($3,025.00), leaving six thousand nine hundred seventy-five ($6,975.00) outstanding.

50.     Defendants committed the foregoing acts knowingly, willfully, maliciously, and in bad faith against Plaintiff and other employees similarly situated.

## COLLECTIVE ALLEGATIONS

51.     Plaintiff brings his FLSA claims on behalf of himself and all other current and former non-exempt workers employed by Defendants at Sierra Suites during the three (3) years preceding the filing of this Complaint, through entry of judgment in this case (the "Collective").

---

[2] ($700.00/month + $800.00/month) / 2 * 12 months/year / 52 weeks/year * 28.86 weeks from June 13, 2023 through December 31, 2023.

## CLASS ALLEGATIONS

52.     Plaintiff brings his IRC claims pursuant to Fed. R. Civ. P. 23, on behalf of himself and all other current and former non-exempt workers employed by Defendants at Sierra Suites during the six (6) years preceding the filing of this Complaint, through entry of judgment in this case (the "Class").

53.     The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The compensation paid, the positions held, and compensation reported for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said Fed. R. Civ. P. 23.

### *NUMEROSITY*

54.     The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

### *COMMONALITY*

55.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

a.     Whether Defendants filed fraudulent information returns with respect to Plaintiff and the Class members within the meaning of the IRC; and

b.     At what common rate, or rates subject to common method of calculation were and are Defendants required to compensate the Class members for having filed

fraudulent information returns?

*TYPICALITY*

56.     Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of filing fraudulent information returns. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

*ADEQUACY*

57.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in representing plaintiffs in both class action and wage-and-hour employment litigation cases.

*SUPERIORITY*

58.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual

litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

59.    Upon information and belief, Defendants and other employers throughout the District violate the IRC. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

<u>**CAUSES OF ACTION**</u>

**COUNT I.**
**VIOLATION OF 29 U.S.C. § 207—FAILURE TO PAY OVERTIME**
**BROUGHT ON BEHALF OF THE PLAINTIFF AND THE COLLECTIVE AGAINST**
**THE DEFENDANTS, JOINTLY AND SEVERALLY**

60.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

61.    29 U.S.C. § 207 provides that "[e]xcept as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is… employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

62.    Throughout his employment, Plaintiff's cash salaries, and tips, did not compensate him for one-half times the higher of his regular hourly wage, or the minimum wage, for his overtime hours.

63.    Throughout his employment, Plaintiff was not exempt from overtime under 29 U.S.C. § 213.

64.    29 U.S.C. § 216(b) provides that "[a]ny employer who violates the provisions of… section 207 of this title shall be liable to the employee or employees affected in the amount of their… unpaid overtime compensation… and in an additional equal amount as liquidated damages," and further provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."

65.    Defendants knowingly, willfully, and maliciously disregarded the provisions of the FLSA by failing to pay Plaintiff overtime.

### COUNT II.
### VIOLATION OF A.R.S. § 23-355—FAILURE TO PAY WAGES
### BROUGHT ON BEHALF OF THE PLAINTIFF AGAINST THE DEFENDANTS, JOINTLY AND SEVERALLY

66.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

67.     A.R.S. § 23-353 provides in relevant part that "(A) [w]hen an employee is discharged from the service of an employer, he shall be paid wages due him within seven working days or the end of the next regular pay period, whichever is sooner" and that "(B) [w]hen an employee quits the service of an employer he shall be paid in the usual manner all wages due him no later than the regular payday for the pay period during which the termination occurred."

68.     When Duan's employment ended, he was due ten thousand dollars ($10,000.00) in promised severance, which Defendants acknowledged by writing him a check for that amount.

69.     However, the check bounced.

70.     A.R.S. § 23-353(C) provides that "[e]very employer… shall pay wages or compensation due an employee under this section in lawful money of the United States by negotiable check, draft, [or] money order… which can be immediately redeemed in cash at a bank or other financial institution, payable on demand or by deposit in a financial institution of employee's choice and dated not later than the day upon which the check, draft, [or] money order [] is given, and not otherwise."

71.     A.R.S. § 23-355(A) provides in relevant part that "if an employer, in violation of this chapter, fails to pay wages due any employee, the employee may recover in a civil action against an employer or former employer an amount that is treble the amount of the unpaid wages."

72.     Defendants knowingly, willfully, and maliciously disregarded the provisions of the ARS by paying his severance by a bad check.

### COUNT III.
### VIOLATION OF 26 U.S.C. § 7434—FRAUDULENT FILING OF INFORMATION RETURNS
### BROUGHT ON BEHALF OF THE PLAINTIFF AND THE CLASS AGAINST THE DEFENDANTS, JOINTLY AND SEVERALLY

73.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

74.     26 U.S.C. § 7434(a) provides that "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person filing such information return."

75.     Defendants willfully underreported Plaintiff's salary and tip income to the IRS on his 2023 Form W-2.

76.     26 U.S.C. § 7434(b) provides that "[i]n any action brought under subsection (a), upon a finding of liability on the part of the defendant, the defendant shall be liable to the plaintiff in an amount equal to the greater of $5,000 or the sum of—(1) any actual damages sustained by the plaintiff as a proximate result of the filing of the fraudulent information return (including any costs attributable to resolving deficiencies asserted as a result of such filing), (2) the costs of the action, and (3) in the court's discretion, reasonable attorneys' fees."

## JURY DEMAND

77.     Plaintiff demands a trial by jury on all matters so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and on behalf of others similarly situated, respectfully requests that this Court enter a judgment providing the following relief:

A.     At the earliest practicable time giving notice of this collective action, or authorizing Plaintiff to give notice of this collective action, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of the notice's issuance, been employed by Defendants as non-exempt workers. Such notice shall inform such employees that this lawsuit has been filed, of the nature of this lawsuit, and of their right to join this lawsuit if they believe they were denied minimum wage or overtime, or if tipped, a portion of their tips were retained by an employer or manager;

B.     Certification of Plaintiff's IRC claims as a class action under Fed. R. Civ. P. 23;

C.      A declaratory judgment that the practices complained of herein are unlawful under FLSA, AZPW, and IRC;

D.      An injunction against LLC Defendant, its members, managers, agents, successors, employees, representatives, and any and all persons acting in concert with it as provided by law, including but not limited to the Individual Defendant, from engaging in each of the unlawful practices and policies set forth herein;

E.      An award of unpaid overtime, and liquidated damages equal to unpaid overtime, due to Plaintiff and any opt-ins under FLSA;

F.      An award of unpaid wages and liquidated damages equal to twice the unpaid wages, due to Plaintiff under AZPW; and

G.      An award of the greater of $5,000 or the sum of—(1) any actual damages sustained by the plaintiff as a proximate result of the filing of the fraudulent information return (including any costs attributable to resolving deficiencies asserted as a result of such filing), (2) the costs of the action, and (3) in the court's discretion, reasonable attorneys' fees under the IRC;

H.      An award of reasonable attorneys' fees and costs under FLSA; and

I.      Any such other and further legal or equitable relief as the Court may deem necessary, just, and proper.

Dated: Flushing, NY
         July 15, 2024

                                            TROY LAW, PLLC

                                            /s/ Tiffany Troy
                                            Tiffany Troy, Esq.
                                            Aaron B. Schweitzer, Esq.
                                            John Troy, Esq.
                                            TROY LAW, PLLC
                                            41-25 Kissena Boulevard
                                            Suite 110
                                            Flushing, NY 11355

Phone (718) 762-1324
Fax (718) 762-1342
troylaw@troypllc.com
*Attorneys for Plaintiffs*
*John Troy, Esq. and Aaron B. Schweitzer, Esq. to*
*be admitted* pro hac vice